IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Gordon P. Gallagher

Civil Action No. 25-cv-03017-GPG-TPO

KHRISTYNE BATZ BARRENO,

    Petitioner,

v.

JUAN BALTASAR, Warden, Aurora ICE Processing Center, in his official capacity;
ROBERT GUADIAN, Director of the Denver Field Office for U.S. Immigration and Customs Enforcement, in his official capacity;
KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity;
TODD M. LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; and
PAMELA BONDI, Attorney General of the United States, in her official capacity;

    Respondents.

## ORDER

Before the Court is the Verified Petition for Writ of Habeas Corpus (Petition) (D. 1) and Petitioner's Motion to Enforce the Court's November 14, 2025 Order (Motion) (D. 21). Because the briefing demonstrates that Petitioner Khristyne Batz Barreno's (Petitioner) challenge is fundamentally legal in nature, the Court declines to hold a hearing regarding Petitioner's challenge. *See* 28 U.S.C. § 2243. For the reasons stated below, the Court GRANTS the Motion and the Petition.

1

# I. BACKGROUND

Petitioner Khristyne Batz Barreno is a native of Guatemala (D. 1 at 2).[1] She is seeking asylum and withholding of removal under the Immigration and Nationality Act (INA) and Convention Against Torture (CAT) (*id*.). She arrived in the United States around August 2018 (*id*. at 8). She was taken into custody by U.S. Immigration and Customs Enforcement (ICE) around July 12, 2024 (*id*. at 9).

On January 3, 2025, at Petitioner's request, an Immigration Judge (IJ) held a custody redetermination hearing for Petitioner and denied Petitioner's request for a bond, finding that Petitioner failed to meet *her* burden to show that she is not a danger to the community or a flight risk (D. 14 at 5–6). The government has, thereafter, changed the alleged statutory basis for detaining Petitioner from 8 U.S.C. § 1226(a), which makes detention discretionary, to § 1225(b)(2), which does not (*id*. at 7; D. 1 at 5–7).

At least at the time the Petition was filed, Petitioner was held by ICE at its facility in Aurora, Colorado (D. 1 at 2).

On November 14, 2025, the Court granted in part the Petition, finding that it had jurisdiction to hear the Petition (D. 18 at 3).[2] "Because Petitioner was not detained while attempting to enter the country and does not have other circumstances that would subject her to mandatory detention" she "was entitled to a bond hearing" (*id*.). Additionally, the Court found that, in order to continue Petitioner's detention without violating due process, "the 'government

---

[1] The Court takes certain facts from the Petition, which is verified (D. 1 at 34), and subsequent sworn filings (*e.g.*, D. 21-2). Defendants generally do not challenge any of the facts stated in the Petition or later filings, only the legal conclusions (*see* D. 14; D. 22).

[2] *Batz Barreno v. Baltasar*, No. 025-CV-03017-GPG-TPO, 2025 WL 3190936, at *2 (D. Colo. Nov. 14, 2025).

must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence'" (*id*. at 7 (quoting *Diaz-Ceja v. McAleenan*, No. 19-CV-00824-NYW, 2019 WL 2774211, at *11 (D. Colo. July 2, 2019))). The Court, therefore, ordered a bond hearing at which the appropriate standard for continued detention would apply.

"[O]n November 20, 2025, Petitioner received a bond hearing before an immigration judge. At the hearing, the immigration judge granted bond. Petitioner posted bond and, on November 21, 2025, she was released from custody" (D. 19 at 1). However, this has not ended the dispute. Although the IJ "expressly declined to impose additional conditions of release on Petitioner," ICE imposed additional conditions on Petitioner, including "requiring her to wear an ankle monitor" and comply with various reporting requirements (D. 20 at 1).

Petitioner then filed her Motion seeking that the Court order "Respondents to remove the GPS ankle monitor device and any other intrusive conditions of release that were not ordered by the Immigration Judge" (D. 21 at 7).

## II.  LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who demonstrates she is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241. The individual in custody bears the burden of proving that their detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III. ANALYSIS

This Petition raised two issues that the Court resolved in favor of petitioner. First, Petitioner was entitled to a bond hearing. Second, in order to continue to lawfully confine

3

Petitioner without violating due process, the government was required to meet its burden to show that her confinement was warranted at that bond hearing. The government does not contest that it failed to meet that burden (D. 22 at 3).

Respondents argue that they have fully complied with the Court's order by holding a bond hearing (D. 22 at 3-4). Even if strictly true, this is of no moment. They do not raise *any* argument that continued custody of Petitioner could potentially be consistent with due process if they failed to meet their burden at the bond hearing in view of the Court's previous Order. Respondents have not satisfied due process because the government did not carry its burden to show that continued custody does not violate her rights. As such, continued custody of Petitioner is not consistent with due process and, therefore, unlawful. *See Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))). Although Respondents argue that the Court lacks authority to directly review Petitioner's conditions of release (D. 22 at 5), the Court has already found that it has jurisdiction over the Petition, which challenges Petitioner's custody (D. 18 at 3). *See also Cervantes Arredondo v. Baltazar*, 25-cv-3040-RBJ, Order, ECF No. 26 at 4–7 (D. Colo. Dec. 18, 2025) (finding the court retained jurisdiction to enforce its prior orders granting habeas relief and administrative exhaustion was not required prior to raising issues in the habeas proceeding).

And Petitioner remains in custody through the conditions of release imposed by ICE. Courts examining the issue have found that use of a GPS ankle monitor constitutes custody for the purposes of habeas corpus and due process. *N- N- v. McShane*, No. CV 25-5494, 2025 WL 3143594, at *3 (E.D. Pa. Nov. 10, 2025) (finding the assertion that use of an ankle monitor did not

4

constitute custody "not [] persuasive in the slightest"); *Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61, 68 (D. Mass. 2025) (finding habeas petitioner subject to 24/7 GPS device on his ankle "remains in custody in violation of the Due Process Clause of the Fifth Amendment"); *Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3626099, at *1 (S.D.N.Y. Dec. 15, 2025) ("any form of re-detention — including electronic monitoring and mandatory reporting — violates Petitioner's due process rights"). ICE's use of a GPS monitor and other measures instead of a ball and chain makes no difference.

The Court finds that Petitioner remains is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241. The Court orders her release from custody. *See Merchan-Pacheo v. Noem*, No. 1:25-CV-03860-SBP, 2026 WL 88526, at *17 (D. Colo. Jan. 12, 2026) (ordering immediate release from custody notwithstanding potential automatic stay under 8 C.F.R. § 1003.6(c)(4)).

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Petition (D. 1) and Motion (D. 21) are GRANTED. Petitioner is ORDERED released from custody, including removal of the ankle monitor and release from any conditions not specifically and explicitly imposed in writing by the IJ[3] at Petitioner's November 20, 2025 bond hearing or determined to be necessary at a later custody hearing through application of the burden set out by the Court in its prior Order. Respondents are further ORDERED to file a status report to certify compliance within three days of this Order.

---

[3] The Court does not find the general concept of having to follow conditions as imposed, or not, by the IJ at all convoluted or confusing. If, for example, the IJ had found by the appropriate burden of proof that a GPS monitor was necessary to ensure the safety of the public or Petitioner's appearance, the condition would have to be followed. So to is the opposite true. The IJ did not impose a GPS condition and ICE cannot, by itself, add that unimposed condition. Fundamental fairness and compliance with the rule of law mandate this result and comport with a general societal understanding of fairness and fairplay.

DATED January 15, 2026.

BY THE COURT:

Gordon P. Gallagher
United States District Judge